UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LISA PARTEE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 4:04CV1607 TIA |
| ) | |
| CYNDI PRUDDEN, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

This cause is before the Court on Missouri state prisoner Lisa Partee's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (filed November 19, 2004/Docket No. 1). All matters are pending before the undersigned United States Magistrate Judge, with the consent of the parties, pursuant to 28 U.S.C. § 636(c).

On April 1, 1999, Petitioner was convicted by a jury in the Circuit Court of St. Louis City, Missouri, of voluntary manslaughter and armed criminal action. (State v. Partee, 32 S.W.3d 129 (Mo. Ct. App. 2000). On May 28, 1999, the circuit court sentenced Petitioner to ten years and ten years imprisonment, the sentences to run consecutively. (Petr. Exh. A). Petitioner appealed the judgment, and on October 3, 2000, Petitioner's conviction and sentence were affirmed on direct appeal by the Missouri Court of Appeals. (State v. Partee, 32 S.W.3d 129). The Missouri Court of Appeals denied Petitioner's Motion for Rehearing and/or Transfer to the Supreme Court on November 9, 2000, and issued its Mandate on December 21, 2000. (State v. Partee, 32 S.W.3d 129). On March 19, 2001, Petitioner filed a pro se Motion to Vacate, Set Aside or Correct the Judgment or Sentence. (Resp. Exh. B at 5-16). The post-conviction relief court dismissed Petitioner's post-conviction motion on October 16, 2002. (Resp. Exh. B at 103-14). On October 7, 2003, the

Missouri Court of Appeals affirmed the dismissal of Petitioner's post-conviction relief. (Resp. Exh. C). On November 21, 2003, the Missouri Court of Appeals issued its Mandate. (Resp. Exh. C; Petr. Exh. C). Petitioner pursued no other action for review of her convictions and sentence in state court. The instant petition for writ of habeas corpus, signed by Petitioner on November 15, 2004, and was filed in this Court on November 19, 2004, by retained counsel.

Petitioner is currently incarcerated at the Women's Eastern Reception, Diagnostic and Correctional Center in Vandalia, Missouri, pursuant to the sentence and judgment of the Circuit Court of St. Louis City. In the instant petition for writ of habeas corpus, Petitioner raises five grounds for relief:

(1) That the trial court erred in admitting an audio tape statement by the victim in violation of her Sixth Amendment right to confront witnesses;

(2) That the trial court erred by permitting the prosecutor to use at trial a prepared transcript of an inaudible tape allegedly incriminating Petitioner and by denying Petitioner the opportunity to cross-examine the prosecutor about her participation in the making herself a witness to material facts and then being unavailable to testify as to those facts;

(3) That Petitioner received ineffective assistance of counsel by her counsel's failure to disclose all evidence and strategic options including the possibility of battered wife syndrome at sentencing;

(4) That Petitioner received ineffective assistance of counsel by her counsel's failure to move for recusal of the trial judge because of a conflict of interest based on his relationship to a key government witness; and

(5) That Petitioner received ineffective assistance of counsel by her counsel's failure to move for removal of a juror who had an inappropriate relationship to the judge, a co-worker of the judge's wife.

In response to this Court's Order to Show Cause, Respondent requested the Court to dismiss the instant petition arguing that the petition was untimely filed pursuant to 28 U.S.C. § 2244(d)(1)

inasmuch as direct review of Petitioner's conviction and sentence concluded more than one year prior to the filing of the instant petition. Respondent argued that because Petitioner failed to seek transfer to the Missouri Supreme Court asking for discretionary review, Petitioner had waived her right to seek certiorari from the United States Supreme Court, and thus her conviction became final when the time for seeking further direct review in the state court had expired. The Eighth Circuit Court of Appeals held otherwise specifically finding that Petitioner is entitled to the benefit of the ninety-day period for seeking a writ of certiorari from the United States Supreme Court even though she did not seek transfer to the Missouri Supreme Court. Pierson v. Dormire, 484 F.3d 486, 495 (8th Cir.2007). On the record before the Court, the undersigned determined in the Memorandum and Order dated October 31, 2007, that the instant petition was timely filed under 28 U.S.C. § 2244(d).

On May 11, 2007, the Eighth Circuit vacated its panel opinion in Riddle v. Kemna, No. 06-2542, (8th Cir. May 11, 2007), a case relying on Pierson, and has set Riddle for argument before the Court en banc on September 26, 2007. Nonetheless, the undersigned notes that if the Eighth Circuit en banc disagrees with the holding in Pierson, Respondent would be correct that the instant habeas petition is barred by the statute of limitations. The possibility that a future en banc decision might change in the Pierson holdings does allow for a revisiting of those issues in the instant case, but as of the date of this ruling, the Eighth Circuit has not entered a final decision in that case.

## I. Procedurally Defaulted Claims

"Before seeking federal habeas corpus relief, a petitioner must first fairly present the substance of each claim to the appropriate state court." Palmer v. Clarke, 408 F.3d 423, 430 (8th Cir. 2005) (quoting Baldwin v. Reese, 541 U.S. 27, 29 (2004)). Petitioner has not done so with respect to Grounds 2, 3, 4, and 5. In Ground 2, Petitioner claims in part that she was denied the opportunity

to cross-examine the prosecutor about her participation in the making of the transcript. In Ground 3, Petitioner claims that she received ineffective assistance of counsel by her counsel's failure to disclose all evidence and strategic options including the possibility of battered wife syndrome at sentencing. In Ground 5, Petitioner alleges that she received ineffective assistance of counsel by her counsel's failure to move for removal of a juror who had an inappropriate relationship to the judge, a co-worker of the judge's wife. A review of the record shows that Petitioner raised these claims of ineffective assistance of trial counsel and inability to cross-examine the prosecutor in her motion for post-conviction relief and after a review of the merits of the claims, the motion court denied Petitioner relief finding that Petitioner failed to plead the claims sufficiently and the claims were without merit. (Resp. Exh. F at 10, 108-09, 110-11). On appeal of the denial of the motion, Petitioner did not include the claims. (Resp. Exh. G). In Ground 2, Petitioner claims in part that trial court erred by permitting the prosecutor to use at trial a prepared transcript of an inaudible tape allegedly incriminating Petitioner. A review of the record shows that Petitioner neither objected to the admission of the transcript into evidence at trial nor raised the claim on direct appeal. (Resp. Exhs. A at 354 and C). In Ground 4, Petitioner alleges that she received ineffective assistance of counsel by her counsel's failure to move for recusal of the trial judge because of a conflict of interest based on his relationship to a key government witness. A review of the record shows that Petitioner did not raise this claim in her 29.15 motion. Respondent contends that Petitioner has procedurally defaulted the claims raised in Ground 2, 3, 4, and 5, because Petitioner failed to raise these claims at trial, on appeal, and in the post-conviction proceedings. The undersigned agrees that Petitioner is procedurally barred from presenting these claims in federal court.

A claim must be presented at each step of the judicial process in state court to avoid

procedural default. Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994). Failure to raise a claim in post-conviction proceedings is considered abandonment of that claim. Reese v. Delo, 93 F.3d 1177, 1181 (8th Cir. 1996); see also Evans v. Luebbers, 371 F.3d 438, 445 (8th Cir. 2004) (failure to present claims to the Missouri Court of Appeals during a petitioner's direct appeal or in a post-conviction proceeding constitutes procedural default). Because Petitioner failed to raise the claims raised in Grounds 2, 3, and 5 of the instant petition on appeal of the denial of her post-conviction motion, the federal court cannot reach the merits of the claims absent a showing of cause and prejudice or a demonstration "that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). Likewise, because Petitioner failed to raise the claims raised in Grounds 2 and 4 in her 29.15 motion, the undersigned cannot reach the merits of these claims absent a showing of cause and prejudice or a demonstration "that failure to consider the claims will result in a fundamental miscarriage of justice." Id.

The miscarriage of justice exception applies only in extraordinary cases, particularly if a constitutional violation resulted in the conviction of an innocent person. Schlup v. Delo, 513 U.S. 298, 327 (1995). This requires petitioner "to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." Schlup, 513 U.S. at 324. The standard compels petitioner to persuade the court that in light of new evidence no juror would have found him guilty beyond a reasonable doubt. Schlup, 513 U.S. at 329; Perry v. Norris, 107 F.3d 665, 666 (8th Cir. 1997). The Supreme Court noted in Schlup that claims of actual innocence are rarely successful because this type of evidence is usually unavailable. Id.

This Court is precluded from addressing the merits absent a showing of cause and prejudice

or a miscarriage of justice. Petitioner has neither asserted nor shown cause for or prejudice as a result of her failure to raise these claims in the post-conviction proceedings in state court. Nor has Petitioner made a claim of actual innocence. As such, she cannot satisfy the "fundamental miscarriage of justice" exception to the required showing of cause and prejudice. Schlup, 513 U.S. at 314-15; see also O'Rourke v. Endell, 153 F.3d 560, 566 (8th Cir. 1998) (where petitioner does not assert actual innocence, court does not consider any such claim). Therefore, the claims raised in Grounds 3, 4, and 5 of the instant petition are procedurally barred from federal habeas review and should be denied.

## II.     Cognizable Claim

Petitioner's remaining claim appears to state claims that she is in custody in violation of her constitutional rights. Such claim is cognizable and thus may be addressed by this Court.

Section 2254(d)(1) requires federal habeas courts to test the determination of state courts "only against 'clearly established Federal law, as determined by the Supreme Court of the United States,'" and prohibits the issuance of a writ of habeas corpus "unless the state court's decision is 'contrary to, or involved an unreasonable application of,' that clearly established law." Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id., 529 U.S. at 380-83.

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 125 S.Ct. 1432, 1438 (2005). A decision involves an "unreasonable

application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner." Id. at 1439; Williams, 529 U.S. at 405. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410-11).

### III.  Claim Addressed on the Merits

**1.  Ground 1**

In Ground 1 of the instant petition, Petitioner claims that the trial court erred in admitting an audio tape statement by the victim in violation of her Sixth Amendment right to confront witnesses.

Petitioner raised this claim on direct appeal of her conviction. (Resp. Exh. C at 17-18, 19-29). The Missouri Court of Appeals denied Petitioner's claim finding that the statement was a dying declaration and therefore admissible as an exception to the hearsay rule. (Resp. Exh. E at 2-6). Specifically, the Missouri Court of Appeals found the evidence to be admissible and Petitioner's contention of prejudice to be erroneous. In relevant part, the Missouri Court of Appeals opined as follows:

> Appellant's first point on appeal challenges the admission of Dennis Barber's tape recorded statement made during the ambulance ride to the hospital. Appellant claims that Barber's statements implicating Appellant in his shooting were neither dying declarations nor excited utterances, but were strictly hearsay and as such, were improperly admitted at trial resulting in prejudicial error. We first address Appellant's argument concerning the statement being inadmissible under the dying declaration exception.
>
> A trial court has broad discretion to admit and exclude evidence at trial, and error will be found only if this discretion was clearly abused. In matters involving the admission of evidence, we also review for prejudice and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. "[A] conviction will be reversed due to the admission of improper evidence only if the defendant proves

prejudice by showing a reasonable probability that in the absence of such evidence the verdict would have been different." Any error in admitting evidence is not considered prejudicial when similar evidence is properly admitted elsewhere in the case or has otherwise come into evidence without objection. Further, error which may require reversal in a close case may be disregarded as harmless where evidence of guilt is strong.

Hearsay is any out-of-court statement offered to prove the truth of the matter asserted. Generally, courts exclude hearsay because the out-of-court statement is not subject to cross-examination, not offered under oath, and not subject to the fact finder's ability to judge demeanor at the time the statement is made. Nonetheless, exceptions to the general prohibition against hearsay may apply when circumstances conspire to assure the trustworthiness of the declarant's statement despite the absence of cross-examination, the oath, and the fact finder's ability to observe the declarant's demeanor. Admissibility under the dying declaration exception to the hearsay rule requires that the utterance be made while the declarant believes death is imminent and has abandoned all hope of recovery.

Appellant urges us to focus on factors which she believes show that Barber's tape recorded statement did not fall into the dying declaration exception. First, Appellant argues that a substantial period of time elapsed between the shooting and the statement. During this time, Darrick Bates had access and opportunity to discuss the incident with Barber and possibly concoct a story as to the culprit. Appellant also suggests that during the elapsed time that Bates may have confused Barber due to Barber's injuries and drug intoxication. However, the admissibility of a dying declaration does not depend on the length of the interval between the declaration and death, but upon the declarant's state of mind and the belief that the declarant is in a dying condition. Therefore, the temporal proximity between the statement is made and when death occurs is meaningless since it is the impression of almost immediate death and not the rapid succession of death that renders the declaration admissible.

Second, Appellant argues that Barber did not express at any time his belief that his physical condition was such that he was going to die. The tape recording indicates that Barber stated that he hurt all over and that various body parts hurt, but he never expressly stated that he believed he was going to die. Appellant also points to the fact that Barber lied when he was asked whether he had taken any drugs the day of the shooting. Appellant's rationale is that Barber's ability to lie calls into question whether he realized the seriousness of his injuries in that he refused to acknowledge his drug use even though it was necessary for his treatment. Finally, Appellant argues that Barber's mind could have been affected by the drugs that he ingested that day rendering it very difficult, if not impossible, to determine Barber's true state of mind in the ambulance.

An explanatory statement by the declarant as to the presence of a sense of impending death need not be made in express language. The declarant's belief that death may be imminent could be inferred from the declarant's condition and other circumstances that indicate apprehension of imminent death. The court will look to objective facts such as the "nature and extent of the inflicted wounds, statements of attending physicians made to and acquiesced in by the declarant, the length of time elapsing between the making of the declaration and death itself, the administration of last rites, the conduct of the declarant, and any and all other circumstances that reveal [the] apprehension of impending death and abandonment of hope for recovery." In short, unless the declarant makes express statements disclosing the declarant's state of mind, both as to belief of impending death and abandonment of hope of recovery, objective facts must be shown from which the declarant's state of mind as to both factors may be reasonably inferred.

The facts in State v. Mahone ... are strikingly similar to those of the instant case. In Mahone, the defendant challenged the admission of a dying declaration by the victim identifying the defendant as the shooter as lacking any evidence of the victim's belief that he was dying. The victim/declarant was shot, ran down the street, and collapsed onto a nearby porch. When the police and paramedics arrived, they classified him as initially unconscious and in shock, but when the ambulance arrived, the victim was thrashing around and gasping for breath. After being placed in the ambulance, he temporarily regained consciousness and upon the fourth inquiry by the police as to who shot him, the victim identified the defendant. The victim subsequently died on the way to the hospital from his wounds. The court held that this statement was admissible as either a dying declaration or an excited utterance. The court pointed out that: the victim had a grave physical condition at the time he made the statement; he lapsed in and out of consciousness; he sustained massive internal bleeding; and he made the statement shortly before he died. This was sufficient to infer the victim's belief in his imminent demise and the absence of hope of recovery. The holding in Mahone is persuasive in reaching the same conclusion in this case. The record reflects that Barber suffered an extremely serious gunshot wound that was almost certain to result in his death, a very short period of time elapsed between the declaration and Barber's death, and Barber experienced severe pain when he made the declaration. Officer Russell Craven testified that during transport to the hospital, Barber was going in and out of consciousness, moaning loudly, and out of breath. During trial, the medical examiner stated that Barber suffered from a gunshot wound to the left lower side of his back, which fractured a rib, penetrated his kidney and diaphragm, damaged his liver, and lacerated his aorta upon entry. The medical examiner testified that a major laceration of the aorta such as the one Barber suffered could be instantly fatal or fatal within minutes. Further, Barber lost almost a quart of blood, which could be fatal in and of itself. After reaching the hospital, Barber was taken to surgery where he died approximately two hours after being shot. These conditions were sufficient to infer Barber's belief in his

imminent demise and the absence of the hope of recovery.

Finally, Appellant argues that Barber's statements were in response to Officer Craven's interrogation and therefore, were not spontaneous. A dying declaration may be in narrative or question and answer format. Moreover, the fact that a dying declaration was obtained by or made to a police officer for the purpose of being used against the defendant does not render the declaration inadmissible. One of the primary purposes of securing such a statement is to have it available for use against the defendant. There is no requirement that a dying declaration be spontaneous, only that the utterance be made while the declarant believes death is imminent and has abandoned all hope of recovery.

After examining all factors, we find that there was sufficient evidence to support the admission of Barber's statements a as dying declaration. Since these statements were properly admissible, we will not address Appellant's challenge to the excited utterance exception. Point denied.

(Resp. Exh. E at 2-6) (internal citations omitted).

The state court's rejection of Petitioner's claim constituted adjudication on the merits of the claim and must be reviewed under the deferential provisions of 28 U.S.C. § 2254(d)(1). Section 2254(d)(1) requires federal habeas courts to test the findings of state courts only against clearly established federal law, as determined by the Supreme Court of the United States. Further, § 2254(d)(1) prohibits the issuance of a writ of habeas corpus unless the state court's decision is contrary to, or involved an unreasonable application of that clearly established law. Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time Petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id. at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts. Williams, 529 U.S. at 412-13; Carter v. Kemna, 255

F.3d 589, 591 (8th Cir. 2001). A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply. Carter, 255 F.3d at 592 (citing Williams, 529 U.S. at 407). "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Id. (quoting Williams, 529 U.S. at 410-11).

At the time Petitioner's conviction became final, the law was clearly established that the Confrontation Clause of the Sixth Amendment to the United States Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." United States. v. Bartlett, 856 F.2d 1071, 1088 (8th Cir. 1988) (quoting Davis v. Alaska, 415 U.S. 308, 315 (1974). The Confrontation Clause bars the admission of some evidence that would otherwise be admissible under an exception to the hearsay rule. See, e.g., California v. Green, 399 U.S. 149, 155-56 (1970). The right of confrontation means more than being allowed to confront the witness physically. Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986) (citing Davis, 415 U.S. at 308). The main and essential purpose of confrontation is to provide a meaningful opportunity for the cross-examination of the adverse witnesses. Davis, 415 U.S. at 315. The Supreme Court has repeatedly held that the Confrontation Clause permits, where necessary, the admission of certain hearsay statements against a defendant despite the defendant's inability to confront the declarant at trial. See, e.g., Mattox v. United States, 156 U.S. 237, 243 (1895) ("[T]here could be nothing more directly contrary to the letter of the provision in question than the admission of dying declarations"); Pointer v. Texas, 380 U.S. 400, 407 (noting exceptions to the confrontation right for dying declarations and "other analogous situations").

Petitioner argues that the victim's statements were testimonial hearsay and cites to Crawford

- 11 -

v. Washington, 541 U.S. 36 (2004), as support.[1] The Supreme Court has opined that the new rule in Crawford shall not be applied retroactively on collateral review to cases already final on direct review. Whorton v. Bockting, 549 U.S. ___, 127 S.Ct. 1173, 1177-84 (2007). Petitioner's conviction became final on direct review in 2000, well before Crawford was decided, and thus does not apply to the instant claim. Accordingly, the Court must apply the law as it stood before Crawford.

Prior to Crawford, the Confrontation Clause was satisfied where the proffered hearsay had sufficient "guarantees of reliability to come within a firmly rooted exception to the hearsay rule." White v. Illinois, 502 U.S. 346, 356 n.8 (1992); Ohio v. Roberts, 448 U.S. 56, 66 (1980); Reed v. Thalacker, 198 F.3d 1058, 1061 (8th Cir. 1999). In Roberts, the Supreme Court set forth a general approach for determining when incriminating statements admissible under an exception to the hearsay rule also meet the requirements of the Confrontation Clause. 448 U.S. at 65. The Roberts Court opined that the Confrontation Clause "operates in two separate ways to restrict the range of admissible hearsay." Id. "First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case ..., the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." Id. (citations omitted). Second, once a witness is shown to be unavailable, "his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can

---

[1]In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court announced a new rule, as the term is defined in Teague v. Lane, 489 U.S. 288, 301 (1989), because the result in that case "was not *dictated* by precedent existing at the time the defendant's conviction became final." The Court in Crawford held that the Confrontation Clause bars the admission of "testimonial statements of witnesses absent from trial" unless the declarant is unavailable and the accused had a prior opportunity to cross-examine the declarant. Crawford, 541 U.S. at 59.

be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." Id. at 66 (internal footnote omitted). Thus Ohio v. Roberts, 448 U.S. 56, 66 (1990), permits the admission of a hearsay statement of an unavailable declarant as long as the statement "falls within a firmly rooted hearsay exception" or bears "particularized guarantees of trustworthiness."

Exceptions to the Confrontation Clause have always been derived from the experience that some out-of-court statements are just as reliable as cross-examined in-court testimony due to the circumstances under which the statements were made. Spontaneous declarations, statements made in the course of procuring medical services, and dying declarations are excepted statements. White v. Illinois, 502 U.S. 346, 356 (1992) (spontaneous declarations and statements made in medical treatment); Kirby v. United States, 174 U.S. 47, 61(1899) (dying declarations). The dying declarations and medical treatment exceptions to the hearsay rule are based on the belief that persons making such statements are highly unlikely to lie. See, e.g., Mattox 156 U.S. at 244 ("[T]he sense of impending death is presumed to remove all temptation to falsehood, and to enforce as strict an adherence to the truth as would the obligation of oath"); *Queen v. Osman*, 15 Cox Crim. Cas. 1, 3 (Eng.N.Wales Cir. 1881) (Lush, L.J.) ("[N]o person, who is immediately going into the presence of his Maker, will do so with a lie upon his lips"). The particularized guarantees of trustworthiness required for admission under the Confrontation Clause must be drawn from the totality of the circumstances that surround the making of the statement and that render the declarant particularly worthy of belief. The Supreme Court precedents have recognized that statements admitted under a firmly rooted hearsay exception are so trustworthy that adversarial testing would add little to their

reliability.  See Green, 399 U.S. at 161.  Because dying declarations fall within a firmly rooted hearsay exception, the admission of the victim's statements did not deny Petitioner her right to confront and cross examine witnesses.  See, e.g., Mattox v. United States, 146 U.S. 140, 151 (1892).

As determined by the state court, the victim's statement fell within a firmly rooted hearsay exception, a dying declaration.  In its memorandum opinion, the Missouri Court of Appeals set out the standard for the admission of the statements as a dying declaration and determined there was sufficient evidence to support the admission of the victim's statements as a dying declaration.  Because the appellate court determined that the statements were a dying declaration, the statements meet the Roberts reliability standard.  These findings are fairly supported by the record and this Court finds no basis for departing from that analysis.  Such determination was not contrary to, nor involved an unreasonable application of, clearly established federal law.  28 U.S.C. § 2254(d)(1).

Based on the above, the state court's decision denying Petitioner relief is well based on law and fact.  The undersigned is unaware of any "clearly established Federal law, as determined by the Supreme Court of the United States" of which the court's decision runs afoul, nor has petitioner demonstrated such.  Therefore, it cannot be said that the state court's adjudication of the instant claim "resulted in a decision that was contrary to, or involved an unreasonable application of," clearly established federal law.  28 U.S.C. §2254(d)(1).  Neither has Petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  As such, the instant claim should be denied.  28 U.S.C. §2254(d).  Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that Petitioner Lisa Partee's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (filed November 19, 2004/Docket No. 1) is dismissed without further

proceedings.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue in this cause inasmuch as petitioner has failed to make a substantial showing that she has been denied a constitutional right.


Dated this   20th   day of March, 2008.

                                          /s/ Terry I. Adelman
                                        UNITED STATES MAGISTRATE JUDGE